LOCK JOINT PIPE CO. v. MELBER et al.

(Circuit Court of Appeals, Third Circuit.  May 25, 1916.)

No. 2105.

PATENTS ⬯202(1)—ASSIGNMENT—CONSTRUCTION OF RESERVATION.

> A patentee made a full assignment of his patent for the remainder of the term, but subject to a reservation "to myself the unrestricted personal right and license" to operate under the patent "which right and license I may exercise and make use of in person or through and by my duly authorized agent; * * * it being understood and agreed that this license is not assignable." *Held*, that he could not, under the guise of appointing an agent, authorize another to conduct a business under the patent in competition with his assignee, and in which he himself had no interest, except to the extent of a royalty paid him.
>
> [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 281–288; Dec. Dig. ⬯202(1).]

Appeal from the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Suit in equity by the Lock Joint Pipe Company against Frederick Melber and the Electric Welding Company.  Decree for defendants, and complainant appeals.  Reversed.

Drury W. Cooper, of New York City, for appellant.

Elbert L. Hyde, Frederick W. Winter, and Edward A. Lawrence, all of Pittsburgh, Pa., for appellees.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge.  This case calls for a construction of an assignment of a patent and a determination of rights reserved therein by the patentee.

The plaintiff, holding title to a patent, sought to restrain the defendants, claiming rights thereunder, from exercising them in the manner pursued, and to obtain an assessment of damages sustained. The trial court entered a decree dismissing the bill.  This is an appeal from that decree.

Frederick Melber was granted Letters Patent No. 672,176, on April 16, 1901, for Cement or Concrete Construction.  On April 15, 1911, he assigned the patent to Allen M. Hirsch, reserving to himself, however, an "unrestricted personal right and license" to operate under

the patent, "in person or through and by (his) duly authorized agent," without right to assign the license.

Lock Joint Pipe Company, the plaintiff, acquired the patent by assignment from Hirsch and built up a business involving the patent, which, when this litigation began, amounted to about $500,000 a year.

Melber, the patentee, was a consulting engineer, and, so far as the testimony discloses, was at no time engaged in the business of constructing or contracting for cement or concrete work. On September 1, 1914, after the business of the plaintiff had grown to substantial proportions, Melber performed what appears to be his first act under the patent rights reserved, by appointing the Electric Welding Company, one of the defendants, his agent, with authority to operate under the patent. This appointment was made upon Melber's conception of his right to operate through an agent, the effective words of the instrument of appointment being:

"I, Frederick Melber, * * * have appointed the Electric Welding Company * * * my duly authorized agent, to exercise for me and in my place and stead, during the life of the letters patent, the aforesaid rights which I saved and reserved to myself in the assignment to Allen, M. Hirsch."

Collateral to this contract was another between Melber and the Welding Company, providing for the payment to Melber of a royalty on the steel parts of the patent manufactured and sold by the Welding Company, and restricting its broad rights granted by the first instrument, "to the designing, manufacturing and selling of *steel* for use in concrete construction."

The patent is for cement or concrete construction and is concerned with the making of structural shapes or units, such as sewer pipes, composed of cement, fortified with metallic reenforcements along the lines of tension-strains, which project at the ends of the unit and overlap the protruding ends of adjacent units when properly located in the process of laying or erection, so that when the overlapping metallic ends are themselves overlaid with plastic cement the units are welded into an integral, or monolithic, structure. It thus appears that the things with which the patent has to do are cement and fabricated steel parts and the uniting of the two in a way to create strength and withstand strain.

But Melber's peculiar type of fabricated steel reenforcements is the essence and the novel thing of his patent. Without the steel parts and their use in perfecting a union with other parts in a structure, nothing is left of Melber's patent for cement or concrete construction save the cement or concrete. Therefore, competition in the manufacture, use and sale of the steel reenforcements, is, in effect, competition with the entire patent.

Thinking that it had acquired Melber's "unrestricted personal right and license" to make and sell the steel work of the Melber patent, the Welding Company informed the plaintiff of its agreement with Melber and demanded of the plaintiff that it purchase its fabricated steel reenforcements from it, under a threat that refusal would be followed by the Welding Company going into the market and entering into competition with the plaintiff in this feature of the Melber patent. The

plaintiff refused to yield to this demand, and the Welding Company, true to its word, began the manufacture and sale of Melber's steel parts in active competition with the plaintiff.

Fabricated steel of the Melber type, advertised to be within the Melber patent, was sold by the Welding Company in various parts of the country, notably in the far West. Of the several instances of competition with the plaintiff, one only will be mentioned. This is known as the Los Angeles transaction. In this instance the Welding Company sold fabricated steel through the Herringbone Metal Lath Company, which it describes as its agent, to certain successful bidders for sewage construction in Los Angeles, under specifications calling for the Melber structure.

The validity of the patent is admitted, and the instrument between Melber and Hirsch as a valid assignment of the patent is not questioned, though it is coupled with a license back to the assignor or with rights reserved by the assignor. Pope Mfg. Co. v. Clark (C. C.) 46 Fed. 789, 792; Russell v. Kern (C. C.) 58 Fed. 382. The rights reserved are treated by both parties as a license. The question is whether Melber exceeded his reserved rights by appointing the Welding Company his agent, with power to manufacture and sell a patented part in unrestricted competition with the assignee of the patent. This calls for a construction of the reservation clause of the assignment.

In construing the assignment, the whole instrument must be considered and a meaning given to each part, when possible, that is consistent with the meaning of every other part. The assignment consists of but two parts important to the present consideration. The first has to do with the assignment of the patent; the second, with the rights reserved. The first part of the instrument is in the following language:

"I do * * * sell, assign and transfer unto the said Allen M. Hirsch the *whole right, title and interest* in and to the said Improvement in Cement or Concrete Construction and in and to the letters patent therefor aforesaid; *the same* to be held, and enjoyed by the said Allen M. Hirsch for his own use and behoof and for the use and behoof of his legal representatives, to the *full end of the term* for which said letters patent are or may be granted, *as fully and entirely* as the same would have been held and enjoyed by me had this assignment and sale not been made."

From this language it is clear that the patentee intended to assign the patent, not merely to grant a license, and that by this language he assigned the title to the patent and all rights therein save those which he expressly reserved. The rights reserved appear in the second part of the instrument in the following language:

"*This assignment* is made however *subject* to the following express condition to which the said Allen M. Hirsch for himself, his assigns and for his and their legal representatives assents by the acceptance hereof or by doing any act in accordance therewith, to wit, *I hereby save and reserve to myself* the unrestricted *personal right and license*, which right and license *I* may exercise and make use of *in person* or through and by *my duly authorized agent*, namely, to *contract for, make, erect, design, operate under, sell and execute work* in any part of the United States or the territories thereof, *in cement or concrete construction* embodying the invention or improvement of and in accordance with said patent number 672,176 without payment of royalty or license fees of any kind whatever; it being understood and agreed that *this license is not assignable* to any other person or corporation."

234 F.—21

The defendants maintain that by this clause Melber reserved to himself every right which he had in the patent before he assigned it, save the right to assign the same and the right to give licenses thereunder. These include the right to contract for and build concrete construction embodying the invention of the patent, and to make, use and sell the individual parts of the patent anywhere and everywhere in competition with the assignee. With this construction of the clause, in so far as it goes, we are in entire accord; but the defendants go further, and maintain that Melber may exercise these unquestioned rights by surrendering them to another designated his agent, to be exercised in turn by the agent under authority of the phrase that Melber "may exercise and make use of (his reserved rights) in person or through and by (his) *duly authorized agent.*" With this construction of the clause, illustrated by the contract between Melber and the Welding Company and interpreted by the conduct of the parties under that contract, we do not agree. As the instrument of assignment is Melber's, its language is presumed to be his. As we read that language, it appears to us that Melber, in assigning the title of the patent to another, was particular to reserve to himself certain rights in the patent which *he* could exercise. He first defined the rights as personal, and then declared how he should exercise them, namely in person or through his agent. In other words, the rights reserved were personal to Melber, first, because they were so declared, and second, because of an express inhibition against their assignment to another. Being personal, they were to be exercised by Melber in person, but this does not mean by Melber alone and unaided. As the work is of a character that may readily and very largely be performed by agents, it was provided that the rights might be exercised by Melber through an agent. The provision for the exercise of the rights through an agent is not inconsistent with their personal character, so long as that personal character is maintained in the relation of the principal to the agent.

In the exercise of these rights we think that Melber may contract for and perform concrete construction work as though he had not assigned the patent. He may do this wholly by his own personal acts or he may do it through servants and agents employed to carry on the work in which he is engaged under the rights reserved, whether that work be seeking contracts, actual concrete construction or the manufacture and sale of the patented parts entering into such construction. This would be the exercise by Melber of the rights reserved either directly in person or through an agent. In either event, there would be an exercise of the rights by Melber. What did Melber do? Did he engage in concrete construction or the manufacture of parts embodying the invention of the patent, or did he alone, or through another, seek and obtain contracts either to do construction work or to furnish patented parts? There is no evidence that he did any of these things. What he did was to grant to the Welding Company, in the guise of appointing that company his agent, authority, as expressed in his own language, "to exercise for me and in my place and stead * * * the aforesaid rights which I saved and reserved to

myself in the (said) assignment." By this instrument he did not authorize the Welding Company to act for him in work which he was seeking or in which he was engaged. He gave to the Welding Company, without limitation, the rights which he had *saved and reserved to himself,* with authority to the Welding Company to act not for him but for itself in his place and stead, upon a consideration that it would pay him a certain proportion of the profits which it made in and about its business. True, the comprehensive grant by this instrument was limited by another to the manufacture and sale of steel parts, but by the latter instrument Melber nevertheless delegated to the Welding Company authority to exercise every right which he had reserved for his personal use with respect to those parts, without which the invention is nothing. This delegation or surrender of the rights reserved was in legal effect an assignment by Melber made against the express provision of the clause that the rights reserved are not assignable. If it is not an assignment, we are at a loss to know by what act Melber could violate the provision against assignment.

As we have said, we are of opinion that the rights reserved by Melber are personal to him, to be exercised by him directly, or by him through another. When he ceases to have a personal relation to their exercise, the rights cease to be personal, and are then exercised beyond the authority of the reservation clause. The tests of a legal exercise of such personal rights may be many, but certainly one is that Melber must have a personal relation to their exercise and not merely a personal profit growing out of their exercise by another, in which he is inactive and has no part or of which he may be entirely ignorant. When the Welding Company was authorized by Melber to do what he was authorized to do by the reservation clause, and proceeded to make and sell steel parts, appoint agents, enter into contracts and conduct a general business under the invention of the patent, in which Melber had no participation and in which he had no interest other than in the royalties to be received from the business conducted by the Welding Company, it is difficult to believe that the personal rights reserved to Melber were being exercised by him. In our opinion, the reserved rights had lost their personal character when they were exercised by one to whom Melber had surrendered them for a royalty, that is, for a proportionate share of the profit made out of their use by another, and that they were so exercised without legal right.

It is urged by the defendants that the reservation clause of the assignment is so clear in expression that it is susceptible of but one construction, which is the construction placed upon it by the defendants, and that its language is wholly without ambiguity and raises no question whatever. To this view was the learned trial judge so clearly inclined that he dismissed the bill without hearing the defendant and without leaving the bench. Yet, if the case had originally been submitted to us, we feel that we would have been equally prompt in deciding it the other way. Obviously, therefore, the language does raise a question. Every question has two sides. In some, one side is so prominent, according as it is viewed, that it obscures the other.

Curiously enough, the question in this case must be of that kind, for when two courts hold so clearly to opposite views there must be a question with two distinct sides, and the language out of which such a question arises must be ambiguous indeed.

When an assignment of a patent is susceptible of two constructions and is made so by the ambiguity of its words, the rule is well established that it should be given that construction which prevails most strongly against the party responsible for its terms and chargeable with its obscurity. Christian v. Bank (C. C. A. 8th) 155 Fed. 705, 709, 84 C. C. A. 53; Walker on Patents, § 278, and cases cited. As the language of the assignment is the language of the patentee, its uncertainty must be resolved against him and his privies.

The decree below is reversed and the District Court is directed to proceed with the trial in a manner consistent with this opinion.